BANK OF MOBILE, (ESLAVA v.) See Case No. 4,526.

BANK OF MONTREAL, (ESSEX COUNTY NAT. BANK v.) See Case No. 4,532.

---

## Case No. 891.

BANK OF MOUNT PLEASANT v. SPRIGG.

[1 McLean, 178.] [1]

Circuit Court, D. Ohio. July Term, 1832. [2]

PRINCIPAL AND SURETY — CONTRACT UNDER SEAL —ESTOPPEL—DISCHARGE OF SURETY.

1. In an instrument under seal, where the parties bind themselves as principals, they are

---

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 10 Pet. (35 U. S.) 257.]

estopped, at law, from showing that they were only bound as securities.

[See Sprigg v. Bank of Mt. Pleasant, Case No. 13,257.]

[See note at end of case.]

2. In ordinary cases of security, extending the time or varying the obligation, without the consent of the securities, will discharge them.

[See note at end of case.]

3. But principals are not bound to use active diligence, unless called on to do so, by the securities, through a court of chancery, or otherwise.

4. The doctrine of estoppel is founded on reason and justice.

5. A deed absolute upon its face, in equity, is often considered a mortgage, to prevent the perpetration of a fraud.

6. A penal bond is considered in the light of a security, and is not enforced beyond the indemnity.

[See Massey v. Schott, Case No. 9,262.]

[At law. Action of debt on a bond by the Bank of Mount Pleasant against Samuel Sprigg. On demurrer to the pleas. Judgment for plaintiff. Affirmed by supreme court in Sprigg v. Bank of Mt. Pleasant, 10 Pet. (35 U. S.) 257.]

This case was argued by Mr. Tappan for the plaintiff, and by Mr. Goodenow for the defendant.

OPINION OF THE COURT. This is an action of debt brought on the following instrument: "Know all men by these presents, we, Peter Yarnall & Co., Samuel Sprigg, Richard Symms, Alexander Mitchell and Z. Jacobs, as principals, are jointly and severally held and firmly bound to the President, Directors and Company of the Bank of Mount Pleasant, for the use of the said Bank of Mount Pleasant, in the just and full sum of twenty-one hundred dollars, lawful money of the United States; to the payment of which sum, well and truly to be made to the said President, Directors and Company, for the use aforesaid, within sixty days from the date hereof, we jointly and severally bind ourselves, our heirs, &c., firmly by these presents. Signed with our hands, and sealed with our seals, this 20th of February, A. D. 1826. Peter Yarnall & Co., [Seal.] Samuel Sprigg, [Seal.] Richard Symms. [Seal.] Alexander Mitchell, [Seal.] Z. Jacobs, [Seal.]" The declaration is in the usual form and the defendant filed the general issue and six special pleas. And the questions now for consideration arise on the second and sixth pleas.

The second plea states that the plaintiff is an incorporated bank, and that the above sum was loaned in the ordinary way, for the accommodation of Peter Yarnall and Co., that the above instrument was given to secure the payment of said loan in sixty days, and that Sprigg, Symms, Mitchell and Jacobs were securities and executed the instrument as such, which was fully understood by the directors of the bank. That Peter Yarnall & Co. for their exclusive bene-

fit, received the proceeds of the above bond; and the entry was so made on the books of the bank. That when the debt became due, the accommodation, on the payment of interest, was continued sixty days, without the knowledge or consent of the securities; and that when the debt again became due, on the payment of the discount it was again extended sixty days without the knowledge or consent of the securities, by reason of which the said Samuel Sprigg says that he is discharged from all liability, &c.

The sixth plea states, substantially, the second plea, alleging that the discounts of twenty-two dollars and forty cents were paid at each renewal, and that the said Peter Yarnall & Co. on or about the 24th March, 1829, failed in business, became insolvent and unable to pay their just debts. And that the securities had no notice of the non-payment of the said loan, or of the outstanding of the obligation from the time it became due until the bankruptcy of the said Yarnall & Co. To the second and sixth plea the plaintiff replied, that the said Samuel Sprigg together with Peter Yarnall & Co., Richard Symms, Alexander Mitchell and Z. Jacobs, acknowledged themselves to be jointly and severally held and firmly bound, as principals to the said President, directors and company of the Bank of Mount Pleasant in the sum of twenty-one hundred dollars as aforesaid. To this replication the defendant demurred. To the third, fourth and fifth pleas, the plaintiff demurred, but as the questions in the case arise fully on the second and sixth pleas it is not material to notice the other pleas.

It is not necessary to enquire whether the replication is not defective, for if this be admitted, the demurrer brings up the sufficiency of the second and sixth pleas. The defence in these pleas is, that when the writing obligatory became payable, the bank without the knowledge or consent of the securities or either of them continued the loan on the payment of the discount, from time to time, until the principals, Peter Yarnall & Co., became insolvent, and that the securities by reason thereof are discharged. It is a well settled principle, that where time is given to the maker of the note by the holder, after the note becomes due, which shall deprive the holder from, at any time, demanding and suing for the amount, the indorser is discharged. Tindal v. Brown, 1 Term R. 169; English v. Darley, 2 Bos. & P. 61; Clark v. Devlin, 3 Bos. & P. 365; Gould v. Robson, 8 East, 576; McLemore v. Powell, 12 Wheat. [25 U. S.] 554; Barn. & C. 14; Walwyn v. St. Quintin, 1 Bos. & P. 654; [Bank of U. S. v. Hatch,] 6 Pet. [31 U. S.] 252. And there are cases where ordinary sureties in a bond or other instruments, have a right to call upon the obligee in a court of chancery or otherwise, to bring suit against the principal. Hayes v. Ward, 4 Johns. Ch. 123, 131, 132; King v. Baldwin, 2 Johns. Ch. 554, 17 Johns. 384; 6 Ves. 734. But, in ordinary cases, the obligee is not bound to active diligence unless hastened by some act of the sureties. There are some cases of gross negligence on the part of the obligee, in using proper means to recover the money from the principal until he shall become insolvent, where the securities have been discharged. The renewal of the above loan, by receiving the discount and continuing the original obligation, seems to be the mode of doing business in the bank. And in order to bring up in all its force the principle relied on as a discharge, it may be admitted that in common cases of security the bank, by giving the extensions to the loan, as in this case, would exonerate the securities, yet the question arises whether in this case the securities, from the indulgence given, are exonerated. The facts set up in the pleas, and which if proved must be proved by parol, go directly to contradict the writing obligatory. In the writing the defendants, and the other securities, bind themselves as principals, yet they say they are not so bound, and did not bind themselves as principals, but as securities; and they must be permitted, if the plea be sustained, to introduce parol proof of the fact thus alleged. And we are now to inquire whether this may be done at law, not in chancery.

Without undertaking to decide whether equity can give relief or not, there seems to be no principle better established than that, at law, parol evidence cannot be received to contradict or vary a written agreement. Indeed the general rule is the same in equity; but parol evidence is sometimes admitted in equity to prevent the specific execution of a written agreement, where it has been rescinded, or executed, as varied by consent of the party. Paine v. McIntier, 1 Mass. 69; 10 Mass. 244; Snowden v. Hemming, 1 Dall. [1 U. S.] 83, 11 Mass. 27. It is said that under the statute of Ohio, which authorizes the court, on the rendition of judgment, to designate the principal and the securities, so that the property of the principal may first be taken to satisfy the judgment before the property of the securities is liable, the courts of Ohio hear parol proof, as to who is principal and who are securities. And that under this rule the Ohio courts would be bound, on rendering judgment, in this case, to make the enquiry. And that if they would be bound to do this, it follows, as a matter of course, that the matters alleged in these pleas might be heard and acted on. Such may be the rule under the above statute, and it may be a proper one; but it applies to instruments where upon the face of the obligation it does not appear who are principals or securities. To give effect to the statute this enquiry must be made, and it is not in contradiction to the instrument, but in explanation of its legal effect; an effect, known to the parties at the time they executed the contract. But in this instrument the parties have bound themselves as principals. Is not

the defendant, therefore, and all the other parties to the instrument estopped from denying this fact which they have solemnly admitted under their seals? Hunt v. U. S., [Case No. 6,900;] 1 Chit. Pl. 634; Will. (Mass.) 9; 1 Saund. Pl. & Ev. 316, 325, note 4; [Conway v. Alexander,] 7 Cranch, [11 U. S.] 223; 2 Strange, 817; 7 Term R. 537; 2 Taunt. 278; Co. Litt. 252a; Com. Dig. Estop. This being the form of such instruments adopted by the bank, it was in its effect not a matter of form but of substance. Under this obligation the bank was not bound to give notice, nor was it bound to use active diligence. And it was under this view of the legal effect of this obligation and others, of a similar form, that the bank felt itself authorized to protract the period of payment from time to time, on the payment of the discount, without a renewal of the instrument.

If the defendant had bound himself as a security and not as principal; or had bound himself generally, without specifying in what capacity, he might show that he was security; and then the contract for extending his liability beyond the period contemplated in the contract, without his knowledge or consent, would, no doubt, discharge him. But all being principals, no extension of time for payment, or any other indulgence could operate to discharge any of the parties. It would indeed, be a singular rule of law, short of the statute of limitations, or lapse of time which raises a presumption of payment, which should discharge a principal from his bond. If the defendant were really a principal in the writing, the counsel would hardly contend for his discharge. The rigid technical rule is complained of, and the court are called on, in the spirit of modern reform and advancement, to give liberal views to the case. In short, that they should disregard the technical rule, which does not permit parol evidence, in contradiction to a written instrument, and which, it is contended is often the means of great injustice. Principles of law are adopted not with reference to particular cases, but with the view of preserving the rights of parties, and promoting the great ends of justice. And it is not improbable, that the most salutary rule may, under the peculiar circumstances of a particular case, fail to attain this end. But this rule has become an axiom in the law. It has stood the test of time and experience, and cannot be abandoned, without inconceivable danger. Now it does not appear to be unreasonable or unjust to hold an individual to his solemn contract. If this rule shall be relaxed, how shall he be bound. What certainty will there be in contracts. The rule is well settled, and we think wisely settled, that a man shall be estopped, unless fraud be shown, to deny that which he has admitted by an instrument of the highest dignity. The doctrine of estoppel is founded on reason and justice, and is abundantly sustained by authority. 1 Saund. Pl. & Ev. 316; [Conway v. Alexander,] 7 Cranch, [11 U. S.] 223; Chit. Eq. Dig. 393; 2 Ves. Jr. 542.

In cases of trust, equity will sometimes treat a deed absolute upon its face as a mortgage, but in doing this, parol proof is not heard in contradiction of the instrument, but in explanation of the transaction, to prevent a perpetration of a fraud by the mortgagee. The penalty in a bond is remitted, because it was intended by the parties, and such is the legal effect of the instrument, to operate as a security. And the penalty will have secured the object for which it was introduced, on the recovery of the indemnity. It is believed that no case can be found, where a party has been permitted, in the absence of fraud, to disregard his solemn obligation, or deny a material fact, admitted in it. If the bank had practiced a fraud in the instrument, the court on this ground, either at law or equity, might enquire into the facts establishing the fraud; and as in the case of an absolute deed, prevent the consummation of the fraud. But no such allegation is here made, and the facts in the case do not warrant such a presumption.

Upon the whole we are clearly of the opinion that the special pleas do not set up matter in defence, of which the defendant can avail himself in this form of action, and consequently the demurrers must be sustained to the third, fourth, and fifth pleas, and the court think the second and sixth pleas, under the demurrer to the replication must be held bad. And unless the defendant wishes a trial on the general issue, a judgment must be entered. The case was submitted to the court, and judgment was entered.

This case was removed to the supreme court, by a writ of error, and the judgment of the circuit court was affirmed. [Sprigg v. Bank of Mt. Pleasant,] 10 Pet. [35 U. S.] 257.

[NOTE. This decision was affirmed by the supreme court in Sprigg v. Bank of Mt. Pleasant, 10 Pet. (35 U. S.) 257. Mr. Justice Thompson, in delivering the opinion, said: "It falls within the settled rule of law in relation to sureties, that extending to the principal further time of payment, by a new agreement, will discharge the surety. This, indeed, has not been denied on the argument. It has been contended that it appearing expressly on the face of the bond that the defendant acknowledged himself as principal, did not vary the question; for that all joint and several obligors in a bond are, in a judgment of law, considered principals. That is true, as a prima facie presumption of law, but is not conclusive upon a party when drawn in question before a proper tribunal. But, as matter of estoppel at law, it may stand on a different footing, and is, at all events, as matter of fact more conclusive. * * * In ordinary cases, when sureties sign an instrument without any designation of the character in which they become bound, it may be reasonable to conclude that they understood that their liability was conditional, and attached only in default of payment by the principal. And hence the reasonableness of the rule of law which requires of the creditor that his conduct with respect to his debtor should be such as not to enlarge the liability of the

surety, and make him responsible beyond what he understood he had bound himself. But when one who is in reality only surety is willing to place himself in the situation of a principal by expressly declaring upon his contract that he binds himself as such, there cannot be any hardship in holding him to the character in which he assumes to place himself. As to that particular contract, he undertakes as a partner with the debtor, and has no more right to disclaim the character of principal than the creditor would have to treat him as principal if he had set out in the obligation that he was only surety."

[The defendant in this case then filed a bill in equity to enjoin the bank from further proceedings on the judgment. This bill was dismissed. Sprigg v. Bank of Mt. Pleasant, Case No. 13,257. Sprigg then appealed to the supreme court, which affirmed the decree. 14 Pet. (39 U. S.) 201.]